Dear President Foulcard:
This office is in receipt of your letter dated February 22, 2006, requesting an Attorney General Opinion as to the legal requirements to relocate a licensed riverboat from one parish to another, specifically the Belle of Orleans, LLC d/b/a Bally's Casino berthed in Orleans Parish being relocated to a new berth in St. Mary Parish.
It is acknowledged that a majority of the voters of St. Mary Parish voted "Yes" to Proposition "B" on the ballot of the November 6, 1996 congressional general election, to wit, "Shall riverboat gaming activities be permitted".
Such election result avoids the prohibitory language contained in R.S. 18:1300.21 L. which provides:
 L. Notwithstanding any provision of law to the contrary, no licensee shall berth a riverboat in any parish in which an election was not held pursuant to this Section or in such parish in which such election was held but in which election authority was denied without a favorable vote of the electorate in the parish in which a berth is being sought as provided in this Section.
Your letter questions the applicability of La. Const. Art. XII, § 6(C)(1)(b) regarding "gaming . . . in a parish in which it was not heretofore being conducted", however the constitutional provision most directly applicable to relocation of a licensed riverboat is Art. XII, § 6(C)(2) which provides in part: *Page 2 
 (2) * * *
 In addition, no license or permit regardless of when issued shall be reissued, amended, or replaced to authorize the holder to conduct riverboat gaming, gambling, or wagering operations or activities at a berth or docking facility different from that authorized in the license or permit, unless a referendum election on a proposition to allow such gaming, gambling, or wagering operations or activities has been held in the parish in which the proposed berth or docking facility is located and the proposition has been approved by a majority of those voting thereon.
While the language of this Paragraph does not specifically refer to relocation of a riverboat from one parish to another, it is broadly written to apply not only to that scenario, but also to the relocation of a riverboat to a new berth within the same parish which would also require a referendum election where the proposition is approved by a majority of the voters.
The procedure for calling a referendum election required by the provisions of Art. XII, § 6(C)(2) is contained in R.S. 18:1300.22
B., which provides:
 B. If the election is required by Article XII, Section 6(C)(2) of the Constitution of Louisiana, then such an election may be called either by law or by the adoption of a resolution or ordinance of the governing authority of the parish in which such an election would be required provided the license to conduct such riverboat gaming has been approved, subject to the outcome of the election, by the Gaming Control Board prior to the authorization for the election. The election authorized by this Subsection shall only apply to those parishes in which a majority of the electors of the parish voted to permit riverboat gaming in the election authorized in R.S. 18:1300.21, and conducted at the 1996 congressional general election.
Accordingly it is the opinion of this office that the Gaming Control Board must approve the relocation of the licensed riverboat berth, prior to the calling of the local parish election, subject to the results of that election. Further, unlike the provisions of R.S. 18:1300.22 A. which requires an act of the legislature authorizing the election, an election in a parish to approve relocation of a licensed riverboat berth may be called by adoption of a resolution or ordinance of the parish governing authority.
Hopefully this adequately addresses your concerns. If this office may be of *Page 3 
further assistance please do not hesitate to call.
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY: ______________________________
 Thomas A. Warner III, Senior Counsel
 Gaming Division